IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KENNETH MARION DUNCAN                                                      PLAINTIFF

v.                      Civil No. 05-5066

LEE OWENS, Sheriff, Washington County,
Arkansas; SGT. MUGIE, Head Jailer;
and NURSE RHONDA                                                     DEFENDANTS

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Kenneth Marion Duncan brings this pro se civil rights action under 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was detained in the Washington County Detention Center.

On October 27, 2005, defendants filed a court-ordered motion for summary judgment. (Docs. 11-13.) By order entered on December 16, 2005, plaintiff was directing to respond to the summary judgment motion through a court-prepared questionnaire. On January 17, 2006, plaintiff filed his response. (Doc. 16.) The summary judgment motion is before the undersigned for issuance of this report and recommendation.

### **I. Background**

Duncan was booked into the Washington County Detention Center (WCDC) on July 4, 2004 on charges of battery and public intoxication. (Doc. 16 at ¶ 1.) On September 16, 2004, Duncan was committed to the Arkansas Department of Correction (ADC) and placed on the ADC waiting list. (Doc. 16 at ¶ 14.) As of September 16, 2004, WCDC needed ADC approval before treating Duncan's medical needs. (Doc. 13 at Ex. 2.)

At the time of his intake, Duncan signed a release and consent form which stated, "I

understand I must request medical treatment in writing."  Duncan contends, however, that he does not read well enough to understand much of the paperwork that was given to him and that while detained in the WCDC, the way to get to see a nurse was to ask every jailer that walked by the cell door and eventually a nurse would come by in a couple of days.  (Doc. 16 at ¶¶ 2-3.)  Despite this contention, the defendants have submitted numerous medical requests that plaintiff submitted, beginning on July 6, 2004, and going through November 17, 2004.  (Doc. 13 at Ex. 2.)  These submissions included requests for denture adhesive cream, for special toenail clippers, for sinus medications, for re-order of medications from the Veterans' Administration, and for complaints of lower back pain.  (Doc. 13 at Ex. 2, Doc. 16 at ¶¶ 7-13, 17.)

On November 17, 2004, Duncan submitted a medical request stating, "I have broke [sic] my midle [sic] fanger [sic] on my right hand.  I wood [sic] like for you to look at it plase [sic]."  (Doc. 16 at Ex. 2.)  On that same day, Duncan was seen by jail nurse Rhonda Bradley, who noted that Duncan's finger was swollen, and that she would notify ADC.  A medical request form was sent to ADC on November 17, and the response from ADC was "ok for exam/rx."  (Doc. 13 at Ex. 2.)  According Duncan's progress/follow-up notes from the WCDC, he saw a jail doctor on November 17, 2004.  This doctor noted that Duncan "fell off bunk -- 1 mo. ago.  lots of swelling -- cont. swelling.  Advice x-ray Rt. middle finger.  Cont. Ibuprofen as needed.  Diag. injury Rt. middle finger."  (Doc. 13 at Ex. 2.)

On November 18, 2004, Duncan was taken to the Medi-Serve clinic where he told the doctor there that he had fallen off of his bunk two to three months before and "jammed" is right third finger.  The Medi-Serve doctor noted that no x-ray or exam had been done at the time of the injury.  Upon examination, the Medi-Serve doctor found that the entire finger was swollen

AO72A
(Rev. 8/82)

and tender, and more swollen at the joint. An x-ray was conducted of the finger, which revealed "some degenerative joint damages." The Medi-Serve doctor diagnosed plaintiff with sprain or strain of the right third finger, and noted that he could not exclude the possibility of an old, healed fracture in the finger. The Medi-Serve doctor recommended that Duncan see a hand surgeon. (Doc. 13 at Ex. 2.)

Nurse Jane Baker reported the Medi-Serve doctor's findings to ADC on November 18, 2004. In response, ADC directed the WCDC to "Hold. Will monitor and allow entry. If case worsens or if not entry through 12-17-04, will revisit consult recommendation." (Doc. 13 at Ex. 2.)

Duncan was released to ADC custody on December 2, 2004, where he reported to the staff there that he had broken his finger in July or August 2004. Surgery was performed on his hand on February 10, 2005, and he received follow-up care at ADC. (Doc. 16 at ¶¶ 29-30, 33-34.)

Duncan contends that he fell from his top bunk and broke his finger in either July or August of 2004. He says that he talked to Nurse Rhonda Bradley "several times" before November 17, 2004 and did complete written requests for medical treatment before November 2004. Duncan states that at times before November 17, 2004, when he requested medical treatment for his finger, Nurse Bradley "shouted, 'Denied.'" Duncan says that he never received copies of any of his written medical requests concerning his finger, and he believes that the WCDC denied treatment on his finger because of the cost. (Doc. 16 at ¶ 36.)

When asked to state what evidence he would produce at trial to show that defendants ignored an acute or escalating situation, Duncan responds

> There is circumstantial evidence that supports that not all medical issues are documented and medical care is minimal until committed to ADC. I have been provided with very little evidence/documentation on my finger which is suspect by its absence. I broke my finger in July Aug 2004, it wasn't x-rayed until Nov 18, 2005 [sic] & surgery took place in February 2005. Requiring pins (6 months later) I would think it is suspect that Degenerative Joint Disease was not caused by the broken finger.

(Doc. 16 at ¶ 37.)

Although defendants contend that plaintiff sued them in their official capacities only, plaintiff states that he intended to sue defendants in both their official and individual capacities. He has filed a motion to amend his complaint (Doc. 15) to reflect this intention.

## II. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d 607 *(citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."

AO72A
(Rev. 8/82)

*Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show [1] a deprivation [under color of law] of [2] a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). "[T]o establish a violation of constitutional rights under § 1983, the plaintiff must prove that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury." *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992).

In this case, the plaintiff was a pretrial detainee. Thus, his claims are more properly analyzed under the due process clause of the Fourteenth Amendment than the Eighth Amendment. *Hartsfield v. Colburn*, 371 F.3d 454, 456-457 (8th Cir. 2004). "The standard to be applied in assessing a pretrial detainee's claim of due process violations . . . is not entirely clear." *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 906 (8th Cir. 1999)(citation omitted). Nevertheless, "[t]he Supreme Court has held that pretrial detainees are entitled under the Fourteenth Amendment to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Id.* (*quoting City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983).

In the absence of a clearly binding standard, the Eighth Circuit in analyzing inadequate medical care claims brought by pretrial detainees has applied the Eighth Amendment's deliberate indifference standard. *See e.g., Hartsfield*, 371 F.3d at 456-457; *Spencer,* 183 F.3d at 905-06;

*Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) (analyzing a pretrial detainee's claim of inadequate medical care under the deliberate indifference standard). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) ("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

AO72A
(Rev. 8/82)

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

The first question is whether plaintiff suffered from an objectively serious medical need. Plaintiff alleges that he fell from a top bunk and broke his right middle finger. A broken finger is not an objectively serious medical need. As indicated above, a serious medical need is one that is obvious to a layperson or supported by medical evidence. The only visible symptom that plaintiff had was a swollen finger, and the x-rays taken by the Medi-Serve doctor showed only degenerative joint damage with the possibility of an old, healed fracture. A finger in such a condition, broken or not, is not a serious medical condition. *Cf. Rivera v. Johnson*, No. 95-CV-0845E(H), 1996 WL 549336 (W.D.N.Y. Sept. 20, 1996) (unpublished) ("Prison inmates suffering from ailments such as . . . a broken finger have all ben held to fail to satisfy the constitutional serious-medical-need standard").

AO72A
(Rev. 8/82)

Assuming that the condition was a serious medical need, plaintiff has not shown that condition worsened due to a delay in obtaining treatment. *See Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994) (per curiam) (no liability for delay in medical treatment unless defendant ignored acute or escalating situation, or unless delay adversely affected prognosis). While plaintiff suggests that this may the case, no where in the substantial medical records provided by the defendants does any doctor suggest that the delay in seeking treatment caused the condition to worsen or adversely affect the prognosis. Additionally, it was more than two months after the condition was diagnosed and plaintiff was committed to ADC before surgery was performed. This suggests that the condition was not acute or escalating. *See Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (when inmate alleges that delay in medical treatment rises to level of constitutional violation, inmate must place verifying medical evidence in record to establish detrimental effect of delay in medical treatment).

Also, the plaintiff must show that the defendants knew about the serious medical condition and deliberately ignored the condition. While plaintiff contends that he complained about the condition for several months, he has not been able to provide any proof that the defendants were aware of his injured finger until November 17, 2004. When asked what proof he would present, plaintiff was unable to identify anything specific, stating rather that there was "circumstantial evidence" to support his claim. This is insufficient. *See Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (affirming grant of summary judgment for defendants where record reveals no evidence that defendants knew about plaintiff's serious medical condition and refused to verify underlying facts that they strongly suspected to be true, or declined to confirm

AO72A
(Rev. 8/82)

inferences of risk that they strongly suspected to exist) (*quoting Farmer v. Brennan*, 511 U.S. 825, 843 n.8, 114 S. Ct. 1970, 1982, 128 L. Ed. 2d 811 (1994)).

The claims against the defendants in their official capacities are equivalent to claims against Washington County. *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Washington County may only be held liable for a constitutional deprivation if the deprivation is the result of a policy or custom of the county. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). An official policy involves a deliberate choice by an official who has the authority to establish governmental policy to follow a specific course of action made from various alternatives. *See Ware v. Jackson County, MO*, 150 F.3d 873, 880 (8th Cir. 1998). As the plaintiff has failed to sustain an underlying substantive claim under which his constitutional rights were violated, municipal liability does not attach. *See McCoy v. City of Monticello*, 441 F.3d 920, 922 (8th Cir. 2005) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim").

## IV. Conclusion

Therefore, I recommend that defendants' motion (Doc. 11) for summary judgment be granted.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by**

AO72A
(Rev. 8/82)

**the district court.**

DATED this 23rd day of June 2006.

                                              **/s/ Beverly Stites Jones**
                                        _____
                                        HON. BEVERLY STITES JONES
                                        UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**